## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEITH WHITMORE,                  :
      *Petitioner*          :          **CIVIL ACTION**
                   :
      **v.**                  :
                   :
DEREK OBERLANDER, *et al.*,       :
      *Respondents*        :          **No. 20-1390**

### MEMORANDUM

PRATTER, J.                                                    JUNE 7, 2022

Mr. Whitmore petitions this Court for a writ of habeas corpus. He raises seven ineffective-assistance-of-counsel claims and attempts to add four more such claims through his *pro se* objections to the Magistrate Judge's Report and Recommendation. Mr. Whitmore's additional claims are untimely and, even if considered on their merits, do not state any ground for relief. The other claims were denied by the state courts. Because the state courts' resolutions of these claims were not "contrary to" or an "unreasonable application of" clearly established federal law, the claims are not grounds for habeas relief. After a detailed review, the Court adopts the Magistrate Judge's Report and Recommendation and denies Mr. Whitmore's habeas petition.

### BACKGROUND

### I.     Factual Background

On September 26, 2010, two brothers named Scott and Andrew Sliwinski drove to Tackawanna Street in Philadelphia looking to purchase drugs.[1] Upon getting out of their car, Scott Sliwinski approached the petitioner, Keith Whitmore. An argument erupted and Mr. Whitmore brandished a firearm. As Scott Sliwinski retreated to the vehicle, Mr. Whitmore shot him in the

---

[1] Unless otherwise noted, the facts are drawn from the opinion of the Pennsylvania Superior Court, which addressed Mr. Whitmore's direct appeal. *Commonwealth v. Whitmore*, No. 3318 EDA 2012, 2014 WL 10885748 (Pa. Super. Ct. Aug. 19, 2014) ("*Whitmore I*").

face, killing him instantly. *Commonwealth v. Whitmore*, No. 3148 EDA 2018, 2019 WL 6999940, at *1 (Pa. Sup. Ct. Dec. 20, 2019) ("*Whitmore II*"). After Scott fell, Andrew got out of the vehicle to approach his brother. Mr. Whitmore then shot Andrew in the chest and leg. Andrew survived and testified at trial, but had no memory of the night's events. Oct. 18, 2012 Trial Tr. at 30:18–25.[2]

Two neighborhood children, 12-year-old N.P. and 13-year-old J.C., witnessed the shootings. The boys had been sitting outside along Hawthorne Street at approximately 11:00 p.m. when they saw Mr. Whitmore (who they knew by the nickname "Keefy") and another male walk past them and up to Scott Sliwinski. N.P., who, at the time of trial, had moved from the neighborhood, testified that he saw Mr. Whitmore pull out a gun and shoot the Sliwinski brothers. J.C., who still lived in the same neighborhood, was more equivocal, stating that he thought the shooter looked like Mr. Whitmore but that he began running after the first brother was shot. Oct. 17, 2012 Trial Tr. at 179:9–184:20. N.P. testified that the gun Mr. Whitmore wielded was silver, while J.C. testified that the gun was black. *Id.* at 58:4–5; 183:17–20.

After the shots were fired, N.P. ran to his friend's house and informed the friend's mother of what had just happened. The friend's mother testified at trial to hearing the gunshots, treating N.P.'s skinned knee from his fall on his way to her house, and hearing N.P. tell her that he had just seen Mr. Whitmore shoot the two men.

Two months later, Mr. Whitmore was arrested when police officers responded to a call involving gunshots about three blocks from where the Sliwinski brothers were shot. Officer Dennis Johnson found a Model 1911 .45 caliber semi-automatic pistol with an obliterated serial

---

[2] The trial transcripts in this case also include different volume numbers, but those numbers do not correspond to the dates and there is only a single volume for each date of trial. Thus, to avoid any confusion, the Court will only cite to the trial transcripts by date, not volume number.

number in a bush five to ten yards away from Mr. Whitmore. *Whitmore II*, 2019 WL 6999940, at *1. A ballistics examination revealed that the bullet jacket found in Scott Sliwinski's brain was the same caliber and that it shared unique projectile markings consistent with the barrel of the pistol recovered from the bush. The ballistics examiner could not, however, definitively conclude that the pistol recovered in the bush was the one used in the shooting.

Based on the foregoing evidence, a jury convicted Mr. Whitmore of, *inter alia*, first-degree murder. On October 19, 2013, Mr. Whitmore was sentenced to life imprisonment without the possibility of parole.

## II. Procedural Background

Mr. Whitmore filed direct and collateral appeals prior to seeking habeas relief. His petition includes a series of claims advanced by various counsel with whom he has disagreed at each juncture.

### A. Direct Appeal

On October 23, 2012, Mr. Whitmore, through counsel, filed a post-sentence motion challenging the weight of the evidence. The trial court denied the motion the next day. Mr. Whitmore then filed an appeal through newly appointed counsel. Dkt. No. CP-51-CR-0007422-2011, at 9. He argued, based on the sufficiency and weight of the evidence presented at trial, that his conviction should be overturned because the prosecution failed to prove the requisite intent and malice for the first-degree murder conviction. *Whitmore I*, 2014 WL 10885748, at *2.

The Superior Court affirmed the sentence, finding that Mr. Whitmore's use of a deadly weapon on vital parts of a victim's body sufficiently established the requisite intent for first-degree murder under Pennsylvania law. *Id.* at *2–3.

The Pennsylvania Supreme Court denied Mr. Whitmore's petition for allowance of appeal on March 17, 2015. *Commonwealth v. Whitmore*, 112 A.3d 652 (Pa. 2015) (Table).

3

### B. PCRA Petition

Mr. Whitmore then filed a *pro se* petition under Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541 *et seq.*, on March 1, 2016, followed by an amended *pro se* petition, and then, through counsel, another PCRA amended petition. The Court of Common Pleas dismissed Mr. Whitney's petition for lack of merit. Mr. Whitmore, through counsel, promptly appealed.

In December 2018, the Court of Common Pleas filed an opinion supporting its dismissal.[3] The Court of Common Pleas addressed Mr. Whitmore's claims that his trial counsel had provided ineffective assistance for failing to (1) investigate a related case (referred to as the "Lucas case") and suppress testimony about the firearm, (2) investigate and impeach the credibility Officer Johnson, who had discovered the firearm, (3) renew his request to limit the jury instruction about the firearm, (4) renew his objection to the introduction of the firearm, (5) object to certain comments by the prosecutor in closing argument about the specter of threats against the witnesses, and (6) that trial counsel's cumulative ineffectiveness violated the Sixth and Fourteenth Amendments of the United States Constitution. Opinion at 2–3, *Commonwealth v. Whitmore*, No. CP-51-CR-007422-2011 (Phila. Ct. C.P. Dec. 11, 2018). The Court of Common Pleas denied all six of Mr. Whitmore's ineffective-assistance-of-counsel claims on the merits. *Id.* at 3.

On appeal, addressing the merits of the claims, the Pennsylvania Superior Court affirmed. *Whitmore II*, 2019 WL 6999940, at *1–2.

Mr. Whitmore did not seek allowance of appeal to the Pennsylvania Supreme Court.[4]

---

[3] Such opinions are issued when a PCRA court summarily dismisses a PCRA petition and must support its summary dismissal after the petitioner files an appeal. 210 Pa. Code §1925(a)(1).

[4] Review by the Pennsylvania Supreme Court is discretionary, meaning that "petitioners need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a full opportunity to resolve any constitutional claims." *Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004) (internal quotation marks omitted).

C. Federal Habeas Petition

After exhausting both the direct appeal process and the collateral appeal process in the state courts, Mr. Whitmore sought a writ of habeas corpus in federal court. He filed his petition through counsel on March 11, 2020.

The Court referred this matter to United States Magistrate Judge Richard A. Lloret for a report and recommendation. Judge Lloret issued his R&R on February 18, 2021. Mr. Whitmore, though counsel, objected to Judge Lloret's R&R. The respondents, through the Attorney General of Pennsylvania, replied to Mr. Whitmore's objections.

D. *Pro Se* Objections

After his counsel filed both the habeas petition and objections to the R&R, Mr. Whitmore requested that his counsel withdraw. The Court granted the withdrawal on August 30, 2021 and gave Mr. Whitmore 60 days to file any additional objections to the R&R, which he timely did. In these *pro se* objections, Mr. Whitmore asserts that certain of his counseled objections are based on "totally false facts and arguments," that his counsel "cited things that weren't there," and that his counsel failed to respond to Mr. Whitmore's questions and concerns throughout the process.[5] Doc. No. 17, at ECF 2.

In addition to these *pro se* objections, Mr. Whitmore also raised four additional claims about his PCRA counsel's purported ineffectiveness for failing to raise certain additional ineffective-assistance-of-counsel claims based on his trial counsel's performance.

---

[5] This statement raises an issue with regard to how the Court should approach the two sets of objections, particularly where they conflict. Because the Court permitted Mr. Whitmore to file additional objections, Doc. No. 16, and for the sake of thoroughness, the Court will address both sets of objections where relevant to each of Mr. Whitmore's claims. Where the two sets of objections conflict, the Court construes the *pro se* objections liberally and addresses each side in turn with an independent review of the record.

LEGAL STANDARD

Federal courts can hear habeas petitions from state prisoners, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court, usually through a direct appeal and then a post-conviction petition. 28 U.S.C. § 2254(b)(1)(A).

Assuming that a state prisoner has met the exhaustion requirement, a federal district court "shall not" grant a petition "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court.'" *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). On the other hand, "a state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet.'" *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

If a party timely objects to a magistrate judge's report and recommendation, the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Regardless of whether

6

timely objections are made, district courts may accept, reject, or modify—in whole or in part—the

magistrate judge's findings or recommendations.  *Id.*

DISCUSSION

Because Mr. Whitmore objected to Judge Lloret's R&R, the court reviews it *de novo*.  28

U.S.C. § 636(b)(1).  For the reasons that follow, the Court adopts the R&R in all substantive

respects.  The Court also rejects four new arguments raised by Mr. Whitmore in his *pro se*

objections because they are procedurally defaulted.

**I.     Mr. Whitmore's Firearm-Related Ineffective-Assistance-of-Counsel Claims Are Meritless**

In his original petition, Mr. Whitmore raised four ineffective-assistance-of-counsel claims

based on an unrelated arrest and the introduction of a firearm recovered from that arrest at his

subsequent murder trial.  In order to address Mr. Whitmore's firearm-related claims, it is necessary

to provide additional background on Mr. Whitmore's arrest in that related case, referred to by the

parties as the "Lucas case."

A.  Additional Background Relevant to Firearm-Related Claims from Lucas Case

In November 2010 (two months after the Sliwinski shootings), Mr. Whitmore was arrested

with another man named Kevin Lucas.  Officer Stan Galiczysnki was patrolling Hawthorne Street

when he heard six to seven gunshots.  Doc. No. 7-3, Dec. 10, 2010 Prelim. H'rng Tr. at 5:14–18

(Phila. Mun. Ct., Crim. Div.).  Officer Galiczysnki saw a large group running from the area where

he believed the gunshots had originated and also observed Mr. Lucas and Mr. Whitmore standing

across from each other on opposite sides of Hawthorne Street.  *Id.* at 6:1–20.

Officer Johnson was serving as backup to Officer Galiczysnki at the time and responded

to his call for backup.  After Officer Johnson helped Officer Galiczysnki handcuff Mr. Lucas, he

took Mr. Lucas a few feet away for a pat-down.  Based on Mr. Lucas's statements to him, Officer

7

Johnson and another officer searched a bush approximately 20 to 25 feet from Mr. Whitmore and discovered a gun in the bush. Pursuant to department policy, they protected the scene and waited until a detective arrived to collect the firearm. *Id.* at 20:25–21:3. Detective John Hopkins testified at Mr. Whitmore's murder trial that he was the person who recovered the firearm from the bush. Oct. 16, 2012 Trial Tr. at 132:13–15. Two firearms were recovered from the scene: one on the even-numbered side of the street, on which Mr. Whitmore had been standing, and one on the odd-numbered side of the street, on which Mr. Lucas had been standing.

Mr. Whitmore and Mr. Lucas were each charged with unlicensed possession of a firearm, but Mr. Lucas was granted immunity in exchange for his testimony. At the preliminary hearing on Mr. Whitmore's firearm charge, Mr. Lucas testified and recanted the story that appeared to form the basis for his immunity:

> Q: Mr. Lucas, do you know the defendant?
>
> A: Yes.
>
> Q. [W]ere you at the area of Meadow and Hawthorne Streets on November 23 of this year?
>
> A: Yes.
>
> Q: That's the night you got arrested?
>
> A: Yes.
>
> Q: Was the defendant there also?
>
> A: Yes.
>
> Q: Can you tell the Court what happened?
>
> A: Well, we was inside the bar, you know, socializing, whatever. An altercation had broke out between my girlfriend and my cousin, whatever. And they got into a verbal dispute. It ended up escalating, going outside and whatever, just a big old crowd of females coming outside and arguing, fighting. They started to fight. And myself and also Keith Whitmore and other males that was out there was trying to break the fight up. And in the midst of that, cops came, whatever, and broke it up, whatever. They came down on me with their guns raised, whatever, saying that I had a gun on me, whatever. That was it.
>
> Q: And you did have a gun on you, right?
>
> A: No. They didn't find no weapon on me.

Q: You threw your gun?

A: They didn't find no weapon on me.

Q: Did you hear gunshots that night?

A: Yes.

Q: How many?

A: I can't really say how many. It wasn't really like in the area.

Q: It wasn't in the area where you were?

A: It was in that area, but it wasn't in the area right where I was at. It wasn't right where I was at, but it was in the area.

Q: And do you remember telling Officer Johnson that [Mr. Whitmore] shot at you?

A: Negative.

. . .

The Court: Do you understand that if it can be established you lied at this proceeding, that that is all gone, that immunity petition is gone? If you lie, what you say here can be used against you.

A: Right.

Doc. No. 7-3, Dec. 10, 2010 Prelim. H'rng Tr. at 11:2–12:25.

Once Mr. Lucas recanted, Mr. Whitmore argued that Officer Johnson's testimony as to what Mr. Lucas told him was hearsay and that there was no admissible evidence to support the charge for possession of a firearm against Mr. Whitmore. The prosecutor dropped the firearm possession charge against Mr. Whitmore.

At Mr. Whitmore's murder trial, only Officer Johnson testified about this prior incident. The state court prevented the prosecution from calling Mr. Lucas to testify because questions about what he previously told Officer Johnson "about the gun shoot-out" would not have been relevant to the murder charges and would have been prejudicial to Mr. Whitmore. Oct. 18, 2012 Trial Tr. at 9:20–10:4. The scope of Officer Johnson's testimony about the November 23 arrest was limited to his discovery of the firearm in the bush near Mr. Whitmore. He testified only that he responded to a back-up call from other officers and did not testify about the gunshots. Oct. 16, 2012 Trial Tr. at 117:19–118:7. He testified that he recognized the firearm at the murder trial, which had

9

already been introduced into evidence, as the one he found in the bush near Mr. Whitmore on November 23rd.

### B. Legal Standard

Based on this related case, Mr. Whitmore raised four ineffective-assistance-of-counsel claims: (1) trial counsel failed to investigate and develop evidence stemming from the related case involving Kevin Lucas; (2) trial counsel failed to investigate and introduce certain information into evidence to impeach Officer Johnson, who had discovered the gun; (3) trial counsel failed to renew his request for a jury instruction regarding evidence related to the recovery and introduction of the firearm; and (4) trial counsel failed to renew his objection to the trial court's admission of evidence related to the firearm.[6] Mr. Whitmore properly exhausted all four claims through his PCRA petition and appeal. In his R&R, Judge Lloret recommended denying all four claims as lacking merit. Mr. Whitmore, both through counsel and *pro se*, objected to the R&R as to all four claims. The respondents dispute Mr. Whitmore's objections.

Because Mr. Whitmore objected to the R&R, the Court addresses the state court's conclusion as to each of Mr. Whitmore's firearm-related ineffective-assistance-of-counsel claims *de novo*. To succeed on an ineffective-assistance-of-counsel claim, a petitioner must demonstrate *both* that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that his counsel's performance was deficient, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Assuming a petitioner demonstrates that his counsel's performance was deficient, he must also

---

[6] Mr. Whitmore also objected that appellate counsel failed to pursue this claim on direct appeal, but the Superior Court reviewed the claim on the merits at the PCRA stage.

show that he was prejudiced, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Where a state court addressed a petitioner's claims that his counsel was ineffective and the state court applied the correct legal standard, a petitioner must show that the state court decision "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). A federal court will not substitute its own judgment for that of the state court. *Id.* In other words, a review of ineffectiveness claims in a habeas petition is "doubly deferential" because the reviewing federal court must give "the benefit of the doubt" to *both* the state court *and* the petitioner's counsel. *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *accord Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014).

### C. Mr. Whitmore's Four Firearm-Related Ineffective Assistance of Counsel Claims Lack Merit

For the reasons that follow, the Court adopts Judge Lloret's R&R in full and denies Mr. Whitmore's four exhausted ineffective-assistance-of-counsel claims.

#### 1. Failure to Investigate and Develop Evidence Stemming from the Lucas Case

Mr. Whitmore first argues that his trial counsel failed to investigate and develop certain evidence from the Lucas case. In particular, Mr. Whitmore argues that his trial counsel failed to introduce the fact that Mr. Lucas later recanted his statements about the November 23, 2010 shootout and about Mr. Whitmore throwing his firearm into the bush.

The Superior Court found that this claim had no arguable merit because Mr. Lucas's testimony at the December 2010 preliminary hearing, at which he recanted some of his earlier statements, did not address whether Mr. Whitmore possessed a gun.[7] *Whitmore II*, 2019 WL

---

[7] Under Pennsylvania law, the familiar federal two-part *Strickland* analysis is a three-part test. "[T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel

6999940, at *3.  Rather, Mr. Lucas testified that he, Mr. Lucas, never had a gun, and that Mr. Whitmore never shot at him.[8]  Doc. No. 7-3, Dec. 10, 2010 Prelim. H'rng Tr. at 12:1–4; 13:6–7. As a result, the Superior Court determined that Mr. Lucas's prior testimony would not have been effective in rebutting the Commonwealth's assertion that Mr. Whitmore had, in fact, possessed the gun. Thus, the Superior Court determined that Mr. Whitmore's counsel was not ineffective for failing to raise a meritless claim.  *Whitmore II*, 2019 WL 6999940, at *3.

In the R&R, Judge Lloret agreed, noting that the trial court precluded testimony about Mr. Lucas specifically because questions about the shootout risked prejudice to Mr. Whitmore as prior bad acts evidence.  *Id.*  As the Commonwealth rightly points out, Mr. Whitmore's proposed alternative strategy would "have opened the door to evidence that [Mr. Whitmore] had been involved in another shooting two months after the murder." Doc. No. 7, at 11.

This Court agrees for two separate reasons. First, a review of the preliminary hearing transcript confirms that the Superior Court correctly interpreted the facts adduced at the preliminary hearing on the firearms charge.  The preliminary hearing transcript does not address whether Mr. Whitmore possessed a gun during the November 23 shootout. Thus, the Superior Court correctly applied *Strickland* because a "counsel cannot be deemed ineffective for failing to raise a meritless claim."  *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).  Second, under *Strickland*, a petitioner asserting ineffective assistance of counsel must "overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." *Strickland*, 466 U.S. at 689.  Mr. Whitmore's arguments related to the *Lucas* case fail to overcome

---

had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014).

[8] Conversely, Mr. Whitmore argues elsewhere that Mr. Lucas did, in fact, have a firearm. *See* Doc. No. 17, at ECF 3–4 ("Police Off. Galicynski [sic] actually wrestled with Lucas during his arrest, and personally witnessed him throw the gun he was charged with.").

this presumption because it was sound strategy *not* to risk opening the door to additional testimony about Mr. Whitmore's involvement in the Lucas case. *Cf. Berryman v. Morton*, 100 F.3d 1089, 1100 (3d Cir. 1996) (finding ineffective assistance of counsel where trial counsel took too large of a risk in opening the door to testimony about another homicide where defendant had not been charged). Thus, the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254.

Mr. Whitmore's counseled objections simply repeat the same arguments already rejected. Mr. Whitmore's *pro se* objections take issue with certain descriptions of the factual background,[9] without showing how the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford*, 537 U.S. at 25. Thus, the Court will not address them further. The Court adopts the R&R and denies Mr. Whitmore's petition on this issue.

### 2. *Failure to Impeach Officer Johnson*

Next, Mr. Whitmore argues that trial counsel failed to investigate and introduce evidence of the supposed bias Officer Johnson harbored toward Mr. Whitmore. He has raised several versions of this argument at different junctures.

### a. <u>Claims Addressed by State Courts</u>

According to Mr. Whitmore, he informed his trial counsel that Officer Johnson had attempted to intimidate him on several occasions because Officer Johnson was upset that Mr. Whitmore was dating Officer Johnson's niece. Mr. Whitmore argues that this information would have impeached Officer Johnson's credibility with regard to his testimony that he found the firearm in the bush near Mr. Whitmore after the November 23 shootout.

---

[9] In particular, Mr. Whitmore argues that his trial counsel should have impeached Officer Johnson with certain alleged factual inconsistencies, but that would not change the risk associated with questioning Officer Johnson about the November 23 shootout in the first instance.

The Superior Court rejected this ineffective-assistance-of-counsel claim because its review of the record did not support a finding that counsel was even aware of the supposed animosity between Officer Johnson and Mr. Whitmore and because Mr. Whitmore's self-serving affidavit was the only evidence of the supposed animosity. *Whitmore II*, 2019 WL 6999940, at *4. Judge Lloret's R&R further explained that testimony about Officer Johnson's feelings regarding Mr. Whitmore dating his niece could have opened the door to information about Mr. Whitmore's prior arrests and other prejudicial reasons for Officer Johnson's disapproval of the relationship. R. & R. at 22–23. Nonetheless, Mr. Whitmore raises the same issue again in one of his counseled objections, arguing that his trial counsel "could have . . . asked the officer if he disapproved of the relationship between [Mr. Whitmore] and [Officer Johnson's] niece without ever having to go into why the officer disapproved of it." Doc. No. 9, at 5.

As the R&R noted, Mr. Whitmore's trial counsel had good reason to keep this evidence out of the trial. During a sidebar in which he requested a limiting instruction about Officer Johnson's testimony, Mr. Whitmore's trial counsel specifically noted his concern that he might open the door to character evidence about Mr. Whitmore. Oct. 16, 2012 Trial Tr. at 127:24–128:5 ("I didn't want to possibly open the door to something. I have no prior knowledge of this officer arresting my client in the past, other than that case, and I would be opening the door to that.").

As explained in the R&R, Mr. Whitmore's trial counsel pursued a valid strategy in keeping out prior Whitmore bad acts evidence that could have come out during examination of Officer Johnson. Thus, the state court's determination that Mr. Whitmore's trial counsel was not ineffective for failing to pursue a strategy that would have risked the introduction of evidence regarding Mr. Whitmore's character was neither contrary to nor an unreasonable application of federal law. 28 U.S.C. § 2254(d).

14

In his counseled objections to the R&R, Mr. Whitmore also argues that his trial counsel was ineffective for failing to impeach Officer Johnson's testimony that he knew Mr. Whitmore "from the neighborhood." This is because, according to Mr. Whitmore, Officer Johnson's comment "left the jury with the impression that Officer Johnson knew [him] either based on his exposure patrolling that neighborhood or his having previously arrested the Petitioner for narcotics." Doc. No. 9, at 8. But trial counsel raised precisely this objection at trial and the trial court explained during a side bar that Officer Johnson's "from the neighborhood" testimony was not prejudicial. *See* Oct. 16, 2012 Trial Tr. at 126:23–128:8. Because trial counsel *did* raise this concern at trial, and the court rejected this concern, an ineffective-assistance -of-counsel claim based on a failure to raise this objection lacks merit. *Cf. Gaines v. Superintendent Benner Twp. SCI*, 2022 WL 1494388, at *4–6 (3d Cir. May 12, 2022) (overturning grant of habeas relief where trial counsel did actually raise the objection at issue).

### b. Claim Not Explicitly Addressed by State Courts

Mr. Whitmore also objects both in his counseled objections and *pro se* objections that Officer Johnson had previously testified at the December preliminary hearing that the firearm was black, whereas he testified at trial that the firearm was silver. Doc. No. 9, at 5; Doc. No. 17, at ECF 9, 23. This was a potential basis for impeachment of Officer Johnson that trial counsel did not pursue.

The Superior Court did not address this specific argument, although Mr. Whitmore did raise it in his briefing. Doc. No. 9-2, at ECF 4–5. When a state court rejects a federal claim without explicitly addressing it, there is a rebuttable presumption that the claim was adjudicated on the merits and exhausted for § 2254 purposes. *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

15

Neither party contests this presumption, so the Court will analyze whether the Superior Court properly rejected this argument.

In order to establish a Sixth Amendment claim of ineffective assistance of trial counsel, the petitioner must show prejudice. *Strickland*, 466 U.S. at 687.  Here, Mr. Whitmore argues that the failure to impeach Officer Johnson prejudiced him because the firearm color discrepancy could have reduced the credibility of Officer Johnson's firearm identification.  But, similar to his other claims, impeaching Officer Johnson based on his preliminary hearing testimony risked opening the door to prejudicial testimony regarding the November 23 shootout.

Rather than risking such prejudice, trial counsel actually pursued this strategy through the two eyewitnesses: N.P. described the firearm as silver and J.C. described the firearm as black. *Compare* Oct. 17, 2012 Trial Tr. at 58:4–5, *with id.* at 183:17–20.  Trial counsel emphasized this color discrepancy in closing argument. *See* Oct. 18, 2012 Trial Tr. at 104:8–25.  The jury was able to see the firearm itself and conclude whether these two descriptions were contradictory (*e.g.*, whether the firearm could be described as both black and silver because it was a dark silver color or dual-toned).  The jury was also able to assess whether this color contradiction, if any, established reasonable doubt about whether Mr. Whitmore was the shooter.

Additionally, the prosecution introduced the firearm as evidence through Detective Hopkins, not Officer Johnson.  Detective Hopkins was the person who actually recovered the firearm from the bush at 4682 Hawthorne Street, and he testified that the silver firearm presented at the trial was the same firearm he recovered from the bush near Mr. Whitmore.  Mr. Whitmore does not call into question the chain of custody for the firearm.

Therefore, Mr. Whitmore cannot show that failure to impeach Officer Johnson's different color descriptions of the firearm prejudiced him for an ineffective assistance of counsel claim.  The

Court overrules this objection. The Court adopts the R&R as to this ineffective-assistance-of-counsel claim and denies Mr. Whitmore's petition for habeas on this basis.

### 3. Failure to Renew Request for a Firearm-Related Jury Instruction

Turning to his next ineffective-assistance-of-counsel claim, Mr. Whitmore argues that trial counsel failed to renew a request he had already made to explain that it was not a proven fact that the gun found in the bush belonged to Mr. Whitmore. Mr. Whitmore argues that trial counsel failed to object to the following jury instruction on prior bad acts:

> You have heard evidence tending to prove that the Defendant was guilty of an offense for which he is not on trial here. I am speaking of the testimony to the effect that the Defendant was dealing drugs, and that the Defendant was in possession of a gun on a date over one month after this incident. Those are not on trial here. That evidence is before you in this case for a limited purpose; that is for the purpose of tending to show motive for the crime; that is, the drugs, and the identity of the person who committed the crime; that is, the evidence of the gun.

Oct. 18, 2012 Trial Tr. at 196:1–16.

Mr. Whitmore argues that the jury instruction "implied that his possession of the alleged murder weapon was a proven fact." *Whitmore II*, 2019 WL 6999940, at *4. The Superior Court rejected this claim because the trial court used the phrase "tending to prove," and the broader context showed it was clear that the jury's role was to weigh the evidence and find the facts. *Id.* As a result, the Superior Court found that Mr. Whitmore's counsel was not ineffective for failing to raise a meritless objection. *Id.*

The R&R recommended denying Mr. Whitmore's claim under both prongs of the *Strickland* analysis. First, Judge Lloret explained that the Superior Court's conclusion did not improperly interpret the facts of the case or contravene any Supreme Court precedent because "counsel cannot be deemed ineffective for failing to raise a meritless objection to jury instructions." Doc. No. 8, at 25 (quoting *Hetzel v. Lamas*, 630 F. Supp. 2d 563, 573 (E.D. Pa. 2009)). Second, apart from any performance deficiency, the R&R also explained that Mr.

Whitmore could not show prejudice for purposes of *Strickland* because eyewitness testimony identified him as the shooter regardless of the color of the firearm used. Mr. Whitmore's counseled objection reiterates the same arguments.

The Court agrees that Mr. Whitmore has failed to show that the Superior Court incorrectly interpreted the facts or violated clear Supreme Court precedent in finding that trial counsel was not ineffective for not renewing his request regarding the firearm jury instruction. As other courts have noted, under the performance prong of *Strickland*, trial counsel typically cannot be faulted for failure to object to use of model jury instructions because the model jury instructions actually set the prevailing standard of reasonableness. *See Smith v. McKee*, 598 F.3d 374, 384 (7th Cir. 2010) ("Defense counsel did not act in an objectively unreasonable manner by not objecting to the use of an applicable pattern jury instruction."). Here, the use of "tending to prove" is part of Pennsylvania Standard Jury Instruction 3.08 regarding prior bad acts. Pa. Suggested Standard Jury Instructions (Crim.) § 3.08 (2019). The prior bad acts jury instruction was appropriate because Mr. Whitmore was not on trial for the November 23 shootout. Plus, in addressing a petitioner's claim based on a similar jury instruction, the Court of Appeals has explained that "the language of the instruction does not aggravate any prejudicial aspect of the testimony" because "[i]t does not even refer to the details of the testimony" and properly explained "that the jury ought to use it for a limited purpose." *Allison v. Superintendent Waymart SCI*, 703 F. App'x 91, 100 (3d Cir. 2017). Thus, this Court agrees that the Superior Court's decision was neither contrary to nor an unreasonable application of *Strickland* and also that the Superior Court's decision was not an unreasonable determination in light of the facts presented.

Therefore, the Court adopts the R&R and denies Mr. Whitmore's ineffective-assistance-of-counsel claim based on the firearm jury instruction.

#### 4. *Failure to Renew Objection to Admission of Firearm*

Lastly, Mr. Whitmore argues that his trial counsel, who did object to the admission of the firearm, failed to renew this objection based on the probative value relative to the potential for prejudice. The Superior Court rejected this claim as a matter of Pennsylvania evidentiary law. *Whitmore II*, 2019 WL 6999940, at *5.

In his R&R, Judge Lloret recommended denying this habeas claim because "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The only scenario in which a federal habeas court can consider a claim based on a state trial court's decision to admit evidence under state law rules of evidence is if "the error deprives a defendant of fundamental fairness in his criminal trial." *Bisaccia v. Att'y Gen. of N.J.*, 623 F.2d 307, 312 (3d Cir. 1980). This occurs only when the evidence is "excessively inflammatory" such that "the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial." *Lesko v. Owens*, 881 F.2d 44, 52 (3d Cir. 1989).

The Superior Court found that the firearm had probative value because it was the alleged murder weapon, and that the "close factual nexus" between the gun found by Mr. Whitmore and the gun used in the homicide outweighed any potential for prejudice. *Whitmore II*, 2019 WL 6999940, at *5. Mr. Whitmore's trial counsel pursued a theory that the firearm Mr. Whitmore possessed was *not* the same firearm used in the Sliwinski shootings based on the ballistic expert's inability to definitively confirm a match, as well as the two boys' conflicting accounts of the color of the firearm wielded by Mr. Whitmore.

In the R&R, Judge Lloret recommended denying this claim because the Superior Court's resolution was neither contrary to nor an unreasonable application of clearly established federal law. As explained in the R&R, even Mr. Whitmore's habeas petition conceded that trial counsel

made "vigorous attempt[s] prior to and during the trial to exclude and/or minimize the impact of the gun related evidence." Doc. No. 8, at 30 (quoting Doc. No. 1, at 47). Thus, the R&R concluded, like the Superior Court, that Mr. Whitmore's trial counsel was not ineffective for failing to renew objections that he previously made and that lacked arguable merit.

This Court agrees. Trial counsel cannot be found ineffective for not raising a meritless objection. *Werts*, 228 F.3d at 203.

Now, Mr. Whitmore, through counsel, objects that "the gun was just as, if not more likely Lucas'[s]" and should have been excluded on that basis as irrelevant evidence. Doc. No. 9, at 4. But in his *pro se* objections, Mr. Whitmore criticizes his PCRA counsel for stating this, asserting that the argument "that one could come to the conclusion that Kevin Lucas threw the gun in the bushes and that the gun [Mr. Whitmore] was charged with . . . was more likely Lucas' [gun]" was a "crazy argument." Doc. No. 17, at ECF 34. As noted by Mr. Whitmore, the police found two guns at the scene: one on Mr. Lucas's side of the street and one on Mr. Whitmore's side.

In addition to Mr. Whitmore's rejection of his own argument, the Court also notes that none of Mr. Whitmore's four firearm-based ineffective-assistance-of-counsel claims implicate the eyewitness testimony from two eyewitnesses. Thus, besides failing to demonstrate that the state court's assessment of his ineffective-assistance-of-counsel claims was either contrary to or an unreasonable application of clearly established Supreme Court precedent, Mr. Whitmore has failed to show that "but for counsel's [purported] errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, none of his firearm-related ineffective-assistance-of-counsel claims demonstrate that he suffered any prejudice.

Thus, the Court adopts the R&R as to Mr. Whitmore's firearm-related ineffective-assistance-of-counsel claims.

**II.     Mr. Whitmore's Claim Based on the Prosecutor's Comments Lacks Merit**

Mr. Whitmore also asserts that his trial counsel was ineffective for failing to object to the comments made by the prosecutor during his closing argument and that the comments constituted prosecutorial misconduct.   Mr. Whitmore takes issue with the prosecutor's comments about the testifying witnesses' fears in closing argument:

> They survive in that fear. They make every moment of every day what they can, an eleven-year-old and twelve-year-old, sitting in a little grassy area, talking about movies, being kids, and no matter what this neighborhood is, or was, or will be, it will never take that away from them.
> . . .
> [N.P.] knows [Mr. Whitmore]. He knows him. Two feet away from him, no mistakes. [J.C.], he knows him. [J.C.] came in here and talked to you about fear. He sat here and said: 'I am not afraid,' but he is afraid for his family. He wasn't relocated. He is afraid for them.
> . . .
> Counsel talked about how he was at Homicide, and with the protection of the Homicide Detective, he felt safe and secure. Yes, that's a lot different than sitting here, and looking at [Mr. Whitmore], and seeing his family, people that maybe he recognizes from the neighborhood, people he knows his family is going to encounter in the neighborhood.

Oct. 18, 2012 Trial Tr. at 118:8–16, 135:3–9, 135:18–136:3.

As Mr. Whitmore concedes, his trial counsel *did* object to the fear-related comments during closing arguments. Doc. No. 1, at ECF 49. The trial court overruled this objection. Oct. 18, 2012 Trial Tr. at 136:4–6.[10] Counsel cannot be found ineffective for failure to object where they did in fact raise the objection. *United States v. Hampton*, No. 15-cr-302, 2021 WL 1088289, at *9 (E.D. Pa. Mar. 22, 2021), *certificate of appealability denied*, No. 21-1772, 2021 WL 8154937 (3d Cir. Aug. 30, 2021).

Mr. Whitmore also argues that the prosecutor's statements constituted prosecutorial misconduct.  Specifically, he asserts that there was no evidence that Mr. Whitmore or anyone

---

[10] Mr. Whitmore argues in the alternative that his direct appeal counsel was ineffective for not pursuing this claim. Doc. No. 1, at ECF 49–51. However, the PCRA court addressed this claim.

acting on his behalf made threats against the witnesses. Doc. No. 1, at 48–49. The Commonwealth counters by citing several instances during the trial when witnesses testified that they were afraid for themselves or their family members. Doc. No. 7, at 21–22. The Superior Court rejected this claim on PCRA review, explaining that "it is permissible for the prosecutor to summarize the evidence and offer reasonable deductions and inferences therefrom" and "the Commonwealth's statements during closing argument. . . were provoked by defense counsel's summation." *Whitmore II*, 2019 WL 6999940, at *5 (citing *Commonwealth v. Thomas*, 54 A.3d 332, 338 (Pa. 2012)). The Superior Court found that the prosecutor's "argument was reasonably inferred from the witness's mother's testimony that she feared for her son's safety due to his involvement in the case." *Id.*

The R&R also explained that even if this claim did have merit (which it does not), "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67–68. As the R&R noted, "the Pennsylvania Superior Court decision in this case cited only to state court cases discussing the issue of whether the prosecutor's argument was appropriate under state law." Doc. No. 8, at 34. In Mr. Whitmore's objections, he argues that he presented a federal law claim because the ineffective assistance of counsel argument relates to the Sixth Amendment. Doc. No. 9, at 14. But this does not address the prosecutorial misconduct claim alleging denial of a fair trial.[11] Regardless, the R&R properly concluded that Mr. Whitmore fails to show that the prosecutor's comments "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of

---

[11] Judge Lloret noted in the R&R that he did not have access to Mr. Whitmore's PCRA brief to know whether he "fairly presented" federal case law in arguing this claim to the state court. In his counseled objections, Mr. Whitmore introduces his PCRA brief and argues that the "state case law cited in support of being denied a fair trial relies on and discusses federal constitutional law." Doc. No. 9, at 14. Although this may just barely satisfy the exhaustion requirement, *see McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999), Judge Lloret assumed that the PCRA briefing had raised a federal claim for the sake of his analysis.

due process." Doc. No. 8, at 35 (quoting *Greer v. Miller*, 483 U.S. 756, 765 (1987)). The Superior Court's conclusion that the prosecutor made reasonable inferences during closing argument reasonably determined the facts and applied Supreme Court law.

Thus, the Court dismisses Mr. Whitmore's habeas petition on the basis of his prosecutorial misconduct claim.

### III.   Mr. Whitmore's Cumulative Error Claim Lacks Merit

Next, Mr. Whitmore argues that his trial counsel's cumulative ineffectiveness undermined the fundamental fairness of his trial. This claim was properly exhausted because Mr. Whitmore raised it in the PCRA proceedings. *Whitmore II*, 2019 WL 6999940, at *6. But the Superior Court found that his ineffective-assistance-of-counsel claims failed individually and did not amount to anything more collectively. *Id.* In other words, the whole is not greater than the sum of its parts.

As the R&R explained, a cumulative error claim "aggregates all the errors that individually have been found to be harmless and therefore not reversible" for a determination as to whether all errors taken together created prejudice. *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (internal quotation marks omitted). To prevail on the claim, a petitioner must establish "actual prejudice," such that the claims of trial error taken together had "a substantial and injurious effect or influence in determining the jury's verdict." *Id.*

The R&R concluded that the alleged errors do not "add up to an unreliable verdict." R. & R. at 37. The Court agrees because nowhere does Mr. Whitmore undermine the testimony of the two eyewitnesses, who both knew Mr. Whitmore. Doc. No. 8, at 37. Mr. Whitmore's objections only repeat his same previous arguments. Doc. No. 9, at 15.

The Court adopts the R&R and denies Mr. Whitmore's habeas petition based on his cumulative error claim.

23

IV.    **Mr. Whitmore's Sufficiency of the Evidence Claim Lacks Merit**

Lastly, Mr. Whitmore's habeas petition repeats the claim from his direct appeal that there was insufficient evidence of specific intent to support his conviction for first-degree murder. Doc. No. 1, at ECF 53. On direct appeal, the Superior Court found that there was sufficient evidence of specific intent because the evidence showed that Mr. Whitmore has sufficient time to fashion a conscious purpose to kill after he brandished his firearm and Mr. Whitmore shot Mr. Sliwinski in the face. *Whitmore I*, 2014 WL 10885748, at *3. The Superior Court also found that Mr. Whitmore's "use of a deadly weapon upon a vital part of the decedent's body, *i.e.*, his head, supplie[d] the requisite intent and malice." *Id.*

Mr. Whitmore argues that the state court ruling was based on an unreasonable determination of the facts, in violation of his due process rights. Specifically, Mr. Whitmore takes issue with whether N.P.'s testimony consistently established that he saw money exchange hands in a drug deal. Doc. No. 1, at ECF 55–61. He also asserts that "[p]eople argue without forming a specific intent to kill all the time." *Id.* at ECF 60. As to the use of the gun on Mr. Sliwinski's head, Mr. Whitmore argues that N.P. testified that he saw Mr. Whitmore stumble, which, according to Mr. Whitmore, "shows that the shots were fired 'wild'" without aim "as [Mr. Whitmore] fought to steady himself and remain upright." *Id.* at ECF 60.

The R&R concluded that the Superior Court's decision on appeal was neither contrary to nor an unreasonable application on clearly established federal law. Instead, the R&R explained that Mr. Whitmore's argument was an improper sufficiency-of-the-evidence claim because each of Mr. Whitmore's arguments would require viewing the evidence in the light most favorable to Mr. Whitmore rather than the prosecution, which is the converse of the standard. As the R&R correctly explained, "the relevant question is whether, after viewing the evidence in the light *most favorable to the prosecution*, any rational trier of fact could have found the essential elements of

24

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added).  Pennsylvania law permits the jury to infer the specific intent to kill based on the use of a deadly weapon on a vital part of the body.  *See Whitmore I*, 2014 WL 10885748, at *2 (citing *Commonwealth v. Padilla*, 80 A.3d 1238, 1244 (Pa. 2013)).  Because the evidence introduced at trial showed that Mr. Whitmore shot Mr. Sliwisnki in the head, there was sufficient evidence for a reasonable jury to infer that Mr. Whitmore had the requisite specific intent to kill so as to be guilty of first-degree murder under Pennsylvania law.

Mr. Whitmore objects that "[t]here was no evidence presented that [he] aimed for a vital part of the body." Doc. No. 9, at 16.  But, under Pennsylvania law, such evidence is not necessary to establish specific intent.  *See Commonwealth v. Padgett*, 348 A.2d 87, 88 (Pa. 1975)  ("The firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt.").

The Court adopts the R&R as to the sufficiency of the evidence claim and denies Mr. Whitmore's habeas petition on this claim.

## V.     Mr. Whitmore's New Claims Are Procedurally Defaulted

Mr. Whitmore also attempts to raise four new habeas claims in his October 2021 *pro se* objections. Mr. Whitmore's *pro se* claims are based on PCRA counsel's purported failure to raise ineffective-assistance-of-counsel claims about trial counsel's failure to: (1) request judicial notice of the fact that prior firearm charges were withdrawn; (2) object and ask for a mistrial related to Officer Johnson's purportedly "perjured testimony" about the discovery of the firearm; and (3) call two other police officers from the firearm arrest to counter Officer Johnson's purportedly false testimony, as well as an ineffective-assistance-of-counsel claim about (4) PCRA counsel's failure

to obtain more evidence of his trial counsel's awareness of Officer Johnson's animus toward Mr. Whitmore. Doc. No. 17, at 15, 20–25.[12]

A habeas petitioner cannot raise arguments for the first time in objections to an R&R. *See, e.g., Hawes v. Mahalley*, No. 17-5316, 2020 WL 1508267, at *10 (E.D. Pa. Mar. 30, 2020) (collecting cases). To add such claims would typically require leave to amend the habeas petition. Mr. Whitmore has not sought leave to amend. These new claims are also improper because they are untimely and procedurally defaulted. A state prisoner must exhaust his claims in state court before presenting them for habeas review. 28 U.S.C. § 2254(b)(1)(A). Mr. Whitmore has not presented these claims to any state courts and he would now be time-barred from doing so.[13] If a state procedural rule would prevent the prisoner's claim from being heard on the merits, this Court cannot "consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017).

The Supreme Court has established an exception to default, however, where the petitioner shows that the procedural default of an ineffective-assistance-of-trial-counsel-claim was based on appellate counsel's ineffectiveness and the underlying ineffective-assistance-of-counsel claim is a "substantial one." *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). A "substantial" claim is one that "has some merit." *Id.* Mr. Whitmore argues in conclusory fashion that this Court should consider these new claims on their merits because his procedural default should be excused under the *Martinez*

---

[12] Mr. Whitmore also argues that his trial counsel was ineffective for failing to move to strike the evidence of the firearm. But this simply repackages the fourth firearm-related objection based on admission of the firearm. The Court finds that this claim has already been addressed by the state courts, and that it lacks any merit for the same reasons discussed above.

[13] The Pennsylvania Post Conviction Relief Act requires a petitioner to file their PCRA petition within one year of the date the judgment becomes final. *See* 42 Pa. C.S. 9545(b). Mr. Whitmore's judgment became final on March 17, 2015, when the Pennsylvania Supreme Court denied allowance of his direct appeal. Dkt. No. CP-51-CR-0007422-2011, at 11. If Mr. Whitmore attempted to return to state court to assert these new claims for collateral review, he would be time-barred from doing so after March 17, 2016.

exception because his PCRA counsel was ineffective. Doc. No. 17, at ECF 25. But *Martinez* does not provide him relief from his procedural default because Mr. Whitmore's new claims lack merit. The Court will analyze each of Mr. Whitmore's untimely claims in turn.

A. Trial Counsel's Failure to Request Judicial Notice of Withdrawal of Prior Firearm Charges

Mr. Whitmore argues that his trial counsel was ineffective in failing to request judicial notice of the fact that the firearm possession charge from his November arrest was withdrawn. According to Mr. Whitmore, his trial counsel could have used this to argue that "the Commonwealth itself didn't even believe that there was enough evidence to show that I possessed that .45 pistol." Doc. No. 17, at ECF 21–22.

The Court begins with the presumption that counsel's conduct was part of a sound strategy, which "may only be rebutted through a showing that no sound strategy . . . could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). Here, trial counsel's strategy was to prevent information about the Lucas case from entering Mr. Whitmore's murder trial. As the trial court noted in explaining its reasoning for excluding other information about Mr. Whitmore's firearm-related arrest, the trial court kept out this information to avoid prejudice to Mr. Whitmore.

Had trial counsel sought judicial notice of the fact that the charges were withdrawn, this would have opened the door to the prosecutor presenting evidence as to *why* the charges were withdrawn—namely, Mr. Lucas's recantation. And as the PCRA court noted, trial counsel worked to keep out the surrounding circumstances such as the "highly prejudicial" evidence that Mr. Whitmore shot at Mr. Lucas two months after the Swilisnki shootings. Aug. 21, 2018 PCRA Tr. at 5:24–6:4.

Trial counsel developed evidence that the firearm found in the bush could have belonged to someone else in the high-crime neighborhood. Based on the risk of prejudice from opening the door to the events of the November arrest, Mr. Whitmore fails to overcome the presumption that trial counsel's strategy was sound. Thus, Mr. Whitmore's claim on this issue fails under both prongs of *Martinez* because he has failed to show that his PCRA counsel was ineffective for failing to pursue a meritless ineffective-assistance-of-trial-counsel claim on collateral review and he has not established that his underlying ineffective-assistance-of-trial-counsel claim is a "substantial" one. Therefore, Mr. Whitmore procedurally defaulted this claim.

B. <u>Trial Counsel's Failure to Object and to Request Mistrial for Officer Johnson's "Perjured" Testimony</u>

Next, Mr. Whitmore claims that his trial counsel should have objected to certain statements made by Officer Johnson and ask for a mistrial based on his purported "perjured testimony." Doc. No. 17, at ECF 22. Specifically, Mr. Whitmore asserts that Officer Johnson testified "that it was information that he received from other officers that caused him to go specifically to 4682 Hawthorne St." and that this testimony "led the jury to believe that some other officers led Off[icer] Johnson to 4682 Hawthorne St., where it was just [Mr. Whitmore] there stand[ing] some feet away from the bushes where this gun was found." *Id.* at ECF 23. He also frames this as a prosecutorial misconduct claim. According to Mr. Whitmore, the prosecutor committed "prosecutorial misconduct when it knowingly elicited perjured testimony from the officer who claimed he was the one who discovered the gun presented at trial." *Id.* at ECF 22–23. Mr. Whitmore asserts, without any basis, that the "jury was intentionally lied to and misled by the Commonwealth" and that this violated his due process rights. *Id.*

However, Officer Johnson correctly testified that he went to the location based on information that he received from other officers because, as he testified at the preliminary hearing

related to the November arrest, he was responding to a back-up call from Officer Galiczysnki. Doc. No. 7-3, Dec. 10, 2010 Prelim. H'rng Tr. at 14:19–15:10.  Although Mr. Whitmore frames the prosecutor's questioning as intentionally misleading the jury, any more specificity about who directed Officer Johnson to which portion of the 4600 block of Hawthorne Street at each point in time, and the fact that a crowd was fleeing, would have required testimony about the shootout with Mr. Lucas and Mr. Lucas's subsequent recantation.  The trial court kept out such testimony for Mr. Whitmore's benefit based on the risk of prejudice.  Thus, trial counsel did not object to Officer Johnson's statements.  Again, Mr. Whitmore fails to overcome the presumption that trial counsel's strategy was sound.

Based on this Court's review of the record, Mr. Whitmore's additional ineffective-assistance-of-counsel and prosecutorial misconduct claims based on Officer Johnson's testimony lack merit and thus, are procedurally defaulted.

C.  Trial Counsel's Failure to Call Other Officers to Testify

Mr. Whitmore also argues that his trial counsel was ineffective because he failed to call two other police officers, Officers Hosjood and Galiczynski, to testify about the scene where the firearm was recovered and how the firearm was found.  Mr. Whitmore argues that these two officers would have testified "that there was a large crowd of people running from the scene where Kevin Lucas [and him] were located, which is totally opposite of what Off[icer] Johnson and the Commonwealth had the jury believe." Doc. No. 17, at ECF 24–25.  According to Mr. Whitmore, his trial counsel should have called these officers to develop the theory that someone from the dispersing crowd threw the firearm into the bushes.

But again, this strategy would have opened the door to the prejudicial testimony regarding *why* the crowd was fleeing:  the gunshots.  Officer Johnson's testimony was limited so that he did not testify that he was specifically providing backup to Officer Galiczysnki because of gunshots.

29

And Officer Galiczysnki testified at the December preliminary hearing that, unlike the dispersing crowd running from the sound of the gunshots, Mr. Lucas and Mr. Whitmore remained on opposite sides of the street, near where a firearm was found on each side. *See* Doc. No. 7-3, Dec. 10, 2010 Prelim. H'rng Tr. at 7:4–8:18. The trial court correctly found that Mr. Whitmore would be prejudiced by the admission of testimony regarding a shootout in November that was unrelated to the shootings at issue in the murder trial and, thus, precluded such testimony. It was a reasonable strategy for trial counsel not to call other officers to introduce prejudicial testimony. Because Mr. Whitmore's claim lacks merit, he has not met the *Martinez* standard to overcome his procedural default.

### D. PCRA Counsel's Failure to Obtain Evidence of his Trial Counsel's Awareness of Officer Johnson's Animus

Lastly, Mr. Whitmore claims that his PCRA counsel should have obtained more evidence of his trial counsel's awareness of Officer Johnson's animus toward Mr. Whitmore to support his affidavit, which the Superior Court viewed as self-serving. Doc. No. 17, at ECF 15. Mr. Whitmore argues that his PCRA counsel should have talked to his trial counsel to obtain evidence about trial counsel's awareness of the animus between Mr. Whitmore and Officer Johnson. Doc. No. 17, at 15. But, upon independent review of the record, the Court finds that the Superior Court reasonably interpreted the facts when it concluded that trial counsel was not aware of this animus for the reasons discussed above.

In any case, trial counsel's concern about opening the door to prior bad act evidence was sound trial strategy. Indeed, the prosecutor confirmed at side bar that Officer Johnson *had* arrested Mr. Whitmore, regardless of whether trial counsel was already aware of this. Oct. 16, 2012 Trial Tr. at 128:15–128:20. Because the PCRA failure-to-investigate claim does not have merit, Mr. Whitmore cannot overcome the procedural default.

Thus, the Court denies Mr. Whitmore leave to amend his petition to assert the four new ineffective-assistance-of-counsel claims because they are procedurally barred and meritless.

### CONCLUSION

Having considered Judge Lloret's Report and Recommendation and Mr. Whitmore's counseled and *pro se* objections to it, the Court adopts the Report and Recommendation and denies Mr. Whitmore's petition for habeas corpus.   Because reasonable jurists would not "find it debatable" that each of Mr. Whitmore's claims lack merit, the Court will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).   An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE